### LANSDEN v. HART.

### No. 9553.

Circuit Court of Appeals, Seventh Circuit.

May 5, 1948.

Rehearing Denied June 23, 1948.

---

410

David V. Lansden and Robert L. Lansden, both of Cairo, Ill., for appellant.

George F. Barrett, Atty. Gen., and Albert E. Hallett, Asst. Atty. Gen., for State of Illinois.

Roger P. Marquis, U. S. Dept. of Justice, Lands Division, of Washington, D. C., William W. Hart, U. S. Atty., and Ray M. Foreman, Asst. U. S. Atty., both of Danville, Ill., Ernest R. McHale, Asst. U. S. Atty., of E. St. Louis, Ill., and A. Devitt Vanech, Asst. Atty. Gen., for the United States.

Before SPARKS and MAJOR, Circuit Judges, and STONE, District Judge.

STONE, District Judge.

This action was brought by the owners of land, owners of leasehold interests in land, and operators of hunting clubs to enjoin officials of the Federal and Illinois State Governments from enforcing two Proclamations, one a Presidential Proclamation made under the Migratory Bird Treaty Act of July 3, 1918, as amended, 16 U.S.C.A. §§ 703–711, the other a Proclamation of the Governor of Illinois.

The facts pertinent to the issues involved here are as follows. The State of Illinois had established a game preserve at Horse Shoe Lake in Alexander County. On October 1, 1947, the President of the United States, pursuant to the said Migratory Bird Treaty Act, signed Proclamation No. 2748

which prohibited hunting of all species of wild geese in the designated area of twenty thousand acres surrounding the game preserve at Horse Shoe Lake. At the same time a similar proclamation was signed by the Governor of Illinois.

In their complaint plaintiffs allege that they will suffer irreparable damages by the enforcement of the Proclamations; that the Proclamation of the President was invalid because it was arbitrary, capricious, and an abuse of discretion, made without notice and not in accord with the standards prescribed by the Migratory Bird Treaty Act and that the procedure by which it was adopted did not conform to the federal Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. or the Federal Register Act, 44 U.S.C.A. § 301 et seq. They also allege that the Proclamation of the Governor of Illinois was invalid in that it conflicts with the Game Code of Illinois, Ill. Rev.Stat. 1947, c. 61, § 135 et seq., and violates the Constitution of the United States and the Constitution of the State of Illinois.

After hearing on the motion for a preliminary injunction the District Court found facts as follows: "That prior to September 19, 1947, * * * many conferences and hearings had been conducted by the Department of the Interior, and by the Fish and Wildlife Service of the Department of the Interior, for the purpose of procuring data and evidence concerning migratory waterfowl and in particular geese, with respect to the numbers, the increase or decrease of such numbers of geese, the habits of such geese, and their flyways, and in particular with respect to the concentration of such geese in that area in Alexander County * * *; that said conferences * * * were held at Washington, D. C., Chicago, * * * St. Louis * * * and San Francisco, * * * at various times during the year 1947, at which conferences * * * members of the Fish and Wildlife Service of the Department of the Interior were represented, members of the Conservation Department of the State of Illinois were represented, and persons interested in such subject were also heard, among such persons being certain of the plaintiffs * * *; that sub-

sequent to September 19, 1947, an additional hearing conducted by the Fish and Wildlife Service * * * was held at Chicago * * * September 30, 1947, at which certain of the plaintiffs were present; that prior to September 30, 1947, a petition was presented to the Fish and Wildlife Service * * * by * * * an attorney representing certain of the plaintiffs * * * said petition setting forth the views of said plaintiffs relative to any regulation or regulations to be adopted by the Department of Interior with respect to the taking, hunting, or killing of geese in Alexander County * * * that subsequent to the hearing conducted September 30, 1947, the Secretary of the Interior * * * was informed and advised of the evidence or data presented to the Fish and Wildlife Service * * * upon September 30, 19-47; that following the receipt of all evidence and data by the Department of the Interior with respect to the habits, concentration, distribution, abundance, breeding habits, and times and lines of migratory flight of geese, Proclamation 2748 * * * was presented to the President * * * for signature, and was signed by him October 1, 1947."

The District court then denied plaintiffs' motion for a preliminary injunction.

The Migratory Bird Treaty Act, Sec. 703, Title 16 U.S.C.A. provides in part as follows: " * * * Unless and except as permitted by regulations made as hereinafter provided * * * it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill * * * any migratory bird * * * included in the terms * * * (of the treaties of August 16, 1916 (39 Stat. 1702), and February 7, 1936)"

The Act clearly prohibits all hunting of migratory birds except as may be permitted by regulation. Cochrane v. United States, 7 Cir., 92 F.2d 623; Bailey v. Holland, 4 Cir., 126 F.2d 317. Proclamation 2748 was a proper exercise of administrative discretion vested in the Secretary of Interior and the President by the said Act. Sec. 3 of the Act, 16 U.S.C.A. § 704, provides: "Subject to the provisions and in order to carry out the pur-

poses of the conventions, referred to in section 703 of this title, the Secretary of the Interior is authorized and directed, from time to time, having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the conventions to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulations shall become effective when approved by the President."

■ Both Proclamations, making it unlawful to kill wild geese in the designated area of thirty square miles lying adjacent to the Illinois wildlife preserve were enforcement measures that were neither unreasonable nor capricious but were justified by facts developed by extensive study and investigation made by Federal and State officials charged with conservation of migratory birds.

The federal Administrative Procedure Act, 5 U.S.C.A. § 1003 et seq., provides for the publication of notice in the Federal Register. A notice that the Secretary of Interior intended to prohibit the killing of geese in the vicinity of Horse Shoe Lake appeared in the Federal Register on September 19, 1947. Plaintiffs' objection to the procedure is based on the fact that the Secretary of Interior signed the Proclamation, September 25, 1947, and prior to a hearing had at Chicago on September 30, 1947. It appears from the stipulation of the parties and finding of the court that before the Secretary of the Interior signed the Proclamation he had before him the findings made by the officials of the Federal Wildlife Service based upon its extensive study and investigation relating to the conservation of migratory birds in this area.

After the Secretary had signed the Proclamation the chief counsel of the Federal Fish and Wildlife Service retained it until October 1, 1947 when it was signed by the President.

■ The President's Proclamation 2748 does not violate any of the provisions of the Federal Administrative Act and is valid. The Governor's Proclamation closing the designated area is valid and was authorized by Section 3, subd. D [1] of the Game Code of Illinois, which does not violate any provision of the United States or Illinois Constitutions.

■ No property rights of plaintiffs are involved in these proceedings inasmuch as no person has any property right in live migratory birds and the withdrawal of the privilege of hunting such birds by Federal and State Governments does not deprive anyone of a property right because no such right exists. Permission to hunt, given from time to time by the Federal and State regulations, is not a grant of property, but merely the grant of a privilege. Magner v. People, 97 Ill. 320; American Express Co. v. People, 133 Ill. 649, 24 N.E. 16 S.Ct. 600, 40 L.Ed. 793. Geer v. State of Connecticut, 161 U.S. 519. Plaintiffs were not entitled to the preliminary injunction. The judgment of the Court denying plaintiff's application for a preliminary injunction is affirmed.

[1] " * * * the Director shall, with the approval of the Board of Fish and Game Conservation Advisors, recommend to the Governor, when conditions shall so demand, the closing, by Proclamation of the Governor, of any portion or all of the State of Illinois, for such length of time as may be deemed necessary, to the taking, killing, pursuit, possession or shipment * * * of any one or all of the wild birds or wild animals protected by this Act. * * * "